## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

S.A. HOSPITALITY GROUP, INC.,

    **Plaintiff,**

                                              **No. 2:19-cv-02025-SHM-cgc**

**v.**

ARCH SPECIALTY INSURANCE COMPANY,

    **Defendant.**

---

### FIRST AMENDED COMPLAINT

---

COMES NOW the Plaintiff, S.A. Hospitality Group, Inc., by and through its lawyers and for cause would state unto the Court as follows:

1.    S.A. Hospitality Group, Inc., (hereinafter referred to as S.A.), is a Tennessee Corporation existing under the laws of the State of Tennessee with its principal offices at 3896 Lamar, Apt. 408, Memphis, Tennessee 38118 .

2.    Arch Specialty Insurance Company, (hereinafter referred to as Arch), is a foreign corporation transacting business in Tennessee via the issuance of commercial insurance policies with its principal offices at 2345 Grove Boulevard, Suite 900, Kansas City, Missouri 64108.

3.    S.A. is the named insured on a policy of Tennessee Commercial Property Insurance, policy no. ESP7302556-01, issued by Arch.  A copy of the declaration page is attached as Exhibit 1 (2 pages).

4.    The property insured under the policy referenced above is located at 3896 Lamar Avenue, Memphis, Tennessee and includes a hotel known as the Real Value Inn.

5.     On or about February 16, 2017, the property suffered a fire loss.  The fire was limited to the second floor with the entire floor exposed to fire, smoke and water damage. In addition, the rooms and common areas on the first, third and fourth floors suffered from the fire and smoke. Fire also affected the electrical wiring, and specifically the fire alarm system wiring. A copy of the report of the damage to the alarm system is attached as Exhibit 2 (3 pages).

6.     Plaintiff obtained a contractor to review, examine and provide an estimate for the cost of repairs.  The cost was initially estimated to be $683,560.61.  A copy of the estimate is attached as Exhibit 3 (4 pages).

7.     Plaintiff sent the estimate to Arch.  Arch, in its response, sent a separate appraiser, who estimated the cost to repair to be $181,454.11.  A copy of the summary of their estimate is attached as Exhibit 4 (2 pages).

8.     S.A. disputed this estimate and Arch sent a second appraiser, who reviewed the premises and submitted an estimate of repairs to be $208,267.86.  See Exhibit 5 (2 pages).

9.     Arch tendered a partial settlement for ten rooms that were to be totally repaired in the amount of $174,183.97.

10.     Plaintiff has spent an additional $133,954.00 repair and replace the fire alarm system that was damaged by the fire.  A copy of the cost for the fire alarm is attached as Exhibit 6 (2 pages).

11.     The policy of insurance contains an appraisal clause in the event of a dispute between the insured, S.A., and the insurer, Arch.  The language of the policy states as follows:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the

2

property and amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.  Each party will:

a.      Pay its chosen appraiser; and

b.      Bear the other expenses of the appraisal and umpire equally.

A copy of the appraisal clause is attached as Exhibit 7

12.      On or about December 6, 2017, Ms. Santosh Iyer, as President and owner of S.A. Hospitality Group, Inc. sent a letter to Arch demanding the invocation of the appraisal clause.  A copy of her letter is attached as Exhibit 8.

13.      In an undated letter, sent by Arch to S.A., Arch declined to comply with the terms of its own policy and commenced the appraisal clause process.  A copy of that letter is attached as Exhibit 9 (6 pages).

14.      Arch has requested documentation for loss of income, which Plaintiff did not claim at the time.  However, the hotel itself was leased to a third party who has now vacated.  As a result of Arch's delay and breach of contract, S.A. has incurred a loss of business income and continues to incur a loss of business income.

15.      S.A. does not have the funds to complete the repairs that need to be performed due to Arch's refusal to commence the appraisal clause process.

16.      S.A. requests that this court issue a mandatory injunction to compel Arch to participate in the appraisal clause process.  In the event that Arch refuses, Plaintiff requests that the Court enforce, monitor and confirm the appraisal process as it relates only to the Plaintiff and then to award a judgment against Arch for the amount of monies found to be owed to the Plaintiff.

17.  Plaintiff attaches as Exhibit 10 a list of three (3) names of individuals who can serve as umpire for the appraisal process.

WHEREFORE PREMISES CONSIDERED, Plaintiff prays:

3

1.      That process be issued and served upon Arch.

2.      That upon a hearing of this cause, the Court issue a mandatory inunction, to compel Arch to comply with the appraisal clause process.

3.      In the alternative, if Arch fails or refuses to participate in the appraisal clause process, Plaintiff requests the Court select one of the individuals listed above to serve as umpire, so that Plaintiff may pursue the appraisal process and have a decision rendered by the umpire: once the umpire renders a decision, Plaintiff requests the Court award a money judgment for the amount so awarded by the umpire against Arch.

4.      For such other further and general relief to which Plaintiff might be entitled to. Plaintiff also reserves the right to amend this Complaint as the facts develop.

Respectfully submitted,

CRISLIP, PHILIP & ROYAL

/s/ John B. Philip (by JBB w/permission)
John B. Philip (#8837)
5170 Sanderlin, Suite 201
Memphis, TN 38117
(901) 525-2427
*Attorneys for Plaintiff*

&

McDONALD KUHN, PLLC

/s/ Joseph B. Baker
Joseph B. Baker (28046)
5400 Poplar Avenue, Suite 330
Memphis, TN 38119
(901) 526-0606
*Attorneys for Plaintiff*

4

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been served on the following U.S. Mail and electronic mail on this the <u>15th</u> day of April 2019:

Peter E. Kanaris                                    Chris Vlahos
David E. Heiss                                     1221 6th Avenue North
Michael J. Weiss                                   Nashville, Tennessee 37208
One South Wacker Drive, 31st Floor                 cvlahos@rlfllp.com
Chicago, Illinois 60606                            *Attorney for Defendant*
pkanaris@kshlaw.com
dheiss@kshlaw.com
mweiss@kshlaw.com
*Attorneys for Defendant*

/s/ Joseph B. Baker_____
John B. Philip
Joseph B. Baker

5

**This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes.**



## ARCH SPECIALTY INSURANCE CO.

### (A Nebraska Corporation)

Home Office Address:

2345 Grand Blvd. Suite 900
Kansas City, MO 64108

Administrative Address:

1125 Sanctuary Parkway
Suite 200
Alpharetta, GA 30009
Tel: (404) 682-4313

## TENNESSEE COMMERCIAL PROPERTY

## DECLARATIONS

| | |
|---|---|
| **Policy Number:** | ESP 7302556-01 |
| **Renewal of:** | ESP 7302556-00 |

**Named Insured:**  SA HOSPITALITY GROUP, INC.

**Address:**  3896 LAMARR AVE
MEMPHIS, TN 38118

**Policy Period:**
From:  October 22, 2016   To:  October 22, 2017
at 12:01 A.M., Standard Time at your mailing address shown above.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

Commercial Property Coverage Part

**PREMIUM\***

$22,500.00
Total $22,500.00

Premium Shown is payable at inception.

**\*SEE NEXT PAGE FOR PREMIUM BREAKDOWN**

**LOCATIONS COVERED: 3896 LAMAR AVE
MEMPHIS, TN 38118**

**FORMS AND ENDORSEMENTS** Applying to this Coverage Part and Made Part of this Policy at Time of Issue: See attached Schedule of Forms and Endorsements.

**ISSUE DATE:** November 21, 2016

**Surplus Lines Agent Name:**
**Surplus Lines Mailing Address:**

DAVID R. BRETT

140 Stoneridge Drive, Suite 26
Columbia, SC 29210

**EXHIBIT**

06 EXP0001 43 08 16

Page 1 of 2

**Surplus Lines Agent License:**    913459
**Surplus Lines State Taxes were filed:**  **TN**

Arch Specialty Insurance Company is licensed in the state of Missouri only.

| | |
|---|---|
| *Base Premium: | $22,500.00 |
| Policy Fee: | 460.00 |
| 5% TN S/L Tax: | 1,148.00 |
| .175% TN Stamping Fee: | 40.18 |
| **TOTAL PREMIUM:** | **$24,148.18** |

NFS 20818

# Nichols
## Fire & Security

## Service Ticket

Date 5/18/17  Unit # 30   Is Job Complete   Yes   (No)

Job Name Value Inn  Job #

Address 3896 Lamar

City/TN/Zip Mem. TN  Panel Phone #

| Arrival Time | 8:30 | (AM) or PM | System Type | Fire |
| Completion Time | 4:00 | AM or (PM) | Manufacturer | Fire Lite |
| Drive Time | .5 | | Model # | MS 9200 |
| Total Time | 8.0 | | Key pad/Annunciator | |

### Problem - Complaint / Work to be Performed
Multiple troubles and Fire Damage 2nd Floor.

### Parts/Materials Used

| Qty | Model # | Description | Qty | Part # | Description |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### Work Performed
Began troubleshooting fire alarm system that had numerous troubles and damage from fire. Began listing all obvious parts needed for repair.

None Avail  5/18/17
(Customer Signature)  (Date)  (Print Customer's Name)

1906 Vanderhorn Dr.  Memphis, TN 38134  901-373-0128  Fax 901-373-5631  TN-13

EXHIBIT 2

SAFEGUARD Form No. 811-2/L07CS000333 09/11

NFS 20817

# Nichols
## Fire & Security

## Service Ticket

Date __5/18/17__  Unit # __30__  Is Job Complete  Yes  ⊘No

Job Name __Value Inn__  Job # _____

Address __3896 Lamar__

City/TN/Zip __Mem. TN__  Panel Phone # _____

| Arrival Time | 8:00 | AM or PM | System Type | Fire |
|---|---|---|---|---|
| Completion Time | 4:00 | AM or PM | Manufacturer | Fire Lite |
| Drive Time | .5 | | Model # | MS 9200 |
| Total Time | 8.5 | | Key pad/Annunciator | |

### Problem - Complaint / Work to be Performed

Repairing Fire Alarm
System

### Parts/Materials Used

| Qty | Model # | Description | Qty | Part # | Description |
|---|---|---|---|---|---|
| 8 | 2 WB | smoke det. | | | |
| 6 | Gentex | mini - horns | | | |
| 1 | FCPS 245P | Power Supply | | | |
| 2 | NMM 100P | mini modules | | | |

### Work Performed

Replaced damaged parts listed above. Able to get
all smoke detectors and pull stations operating and
reporting to panel. Began troubleshooting NAC circuits
which have numerous troubles including no E.O.L.
supervision and numerous ground faults and shorts.
Will continue ...

__None Available__  __5/18/17__  _____
(Customer Signature)  (Date)  (Print Customer's Name)

1906 Vanderhorn Dr.  Memphis, TN 38134  901-373-0128  Fax 901-373-5631  TN-1304

SAFEGUARD. unicom Form No. 811-B/LO7G8000333 09/11

06/05/2017 MON 10:18 AM [TX/RX NO 5878]  ☒0002

NFS 21561



### Fire & Security

## Service Ticket

Date _5/19/17_    Unit # _30_    Is Job Complete ⟨YES⟩   No

Job Name _Value Inn_    Job # _____

Address _3876 Lamar_

City/TN/Zip _Mem TN_    Panel Phone # _____

| Arrival Time | 8:30 | AM or PM | System Type | Fire |
|---|---|---|---|---|
| Completion Time | 4:00 | AM or PM | Manufacturer | Fire Lite |
| Drive Time | .5 | | Model # | MS 9200 |
| Total Time | 8.0 | | Key pad/Annunciator | |

### Problem · Complaint / Work to be Performed

_Troubleshooting Grounds_
_and shorts_

### Parts/Materials Used

| Qty | Model # | Description | Qty | Part # | Description |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### Work Performed

_Determined 2ND fl. due to fire damage would_
_need new wire to clear all grounds + shorts._

_None Avail_    _5/19/17_

**(Customer Signature)**    **(Date)**    **(Print Customer's Name)**

**1906 Vanderhorn Dr.  Memphis, TN 38134   901-373-0128   Fax 901-373-5631   TN-1304**

SAFEGUARD

 **Core Construction & Consulting**

Core Construction & Consulting
2234 Knollwood Place
Murfreesboro, TN 37130

## Summary

| | | | |
|---|---|---|---:|
| Line Item Total | | | 546,201.53 |
| Material Sales Tax | @ | 9.250% | 20,156.44 |
| Subtotal | | | 566,357.97 |
| Overhead | @ | 10.0% | 56,514.13 |
| Profit | @ | 10.0% | 56,514.13 |
| P Ppty Cleaning Tax | @ | 9.250% | 4,174.28 |
| Replacement Cost Value | | | $683,560.51 |
| Net Claim | | | $683,560.51 |

Brandon Whitsett

REALVALUEINN

EXHIBIT
3

4/6/20



**Core Construction & Consulting**

Core Construction & Consulting
2234 Knollwood Place
Murfreesboro, TN 37130

## Recap by Room

**Estimate: REALVALUEINN**

| | | |
|---|---:|---:|
| **Area: Main Level** | | |
| Corridor | 26,167.51 | 4.79% |
| West Hallway | 4,412.60 | 0.81% |
| Back Entry | 2,484.65 | 0.45% |
| East Hallway | 8,002.48 | 1.47% |
| **Area: Room 116** | 3,079.24 | 0.56% |
| Room 116 Bathroom | 3,133.84 | 0.57% |
| Area Subtotal: Room 116 | 6,213.08 | 1.14% |
| Rooms 100-140 | 9,401.56 | 1.72% |
| Area Subtotal: Main Level | 56,681.88 | 10.38% |
| **Area: Second Floor** | | |
| Hallway | 63,960.43 | 11.71% |
| **Area: Room 214** | 12,057.06 | 2.21% |
| Room 214 Bathroom | 6,781.65 | 1.24% |
| Area Subtotal: Room 214 | 18,838.71 | 3.45% |
| **Area: Room 216** | 11,687.61 | 2.14% |
| Room 216 Bathroom | 6,781.65 | 1.24% |
| Area Subtotal: Room 216 | 18,469.26 | 3.38% |
| **Area: Room 218** | 3,764.29 | 0.69% |
| Room 218 Bathroom | 6,781.65 | 1.24% |
| Area Subtotal: Room 218 | 10,545.94 | 1.93% |
| Area Subtotal: Second Floor | 111,814.34 | 20.47% |
| **Area: Room 220** | 3,764.29 | 0.69% |
| Room 220 Bathroom | 6,781.65 | 1.24% |
| Area Subtotal: Room 220 | 10,545.94 | 1.93% |
| **Area: Room 221** | 3,764.29 | 0.69% |
| Room 221 Bathroom | 6,781.65 | 1.24% |

REALVALUEINN                                     4/6/2017          Page: 26



## Core Construction & Consulting

Core Construction & Consulting
2234 Knollwood Place
Murfreesboro, TN 37130

| | | |
|---|---|---|
| **Area Subtotal:  Room 221** | **10,545.94** | **1.93%** |
| **Area: Room 219** | 3,764.29 | 0.69% |
| Room 219 Bathroom | 6,781.65 | 1.24% |
| **Area Subtotal:  Room 219** | **10,545.94** | **1.93%** |
| **Area: Room 217** | 3,764.29 | 0.69% |
| Room 217 Bathroom | 6,781.65 | 1.24% |
| **Area Subtotal:  Room 217** | **10,545.94** | **1.93%** |
| **Area: Room 215** | 3,764.29 | 0.69% |
| Room 215 Bathroom | 6,781.65 | 1.24% |
| Rooms 200-240 | 9,401.56 | 1.72% |
| **Area Subtotal:  Room 215** | **19,947.50** | **3.65%** |
| **Area: Third Floor** | | |
| Third Floor Hallway | 40,356.46 | 7.39% |
| Middle Stairwell | 2,829.61 | 0.52% |
| Rooms 300-340 | 9,401.56 | 1.72% |
| **Area Subtotal:  Third Floor** | **52,587.63** | **9.63%** |
| **Area: 4th Floor** | | |
| 4th Floor Hallway | 44,794.76 | 8.20% |
| Rooms 400-440 | 9,401.56 | 1.72% |
| **Area Subtotal:  4th Floor** | **54,196.32** | **9.92%** |
| **Area: Exterior** | | |
| Rear Elevation | 14,024.00 | 2.57% |
| **Area Subtotal:  Exterior** | **14,024.00** | **2.57%** |
| Miscellaneous | 96,766.10 | 17.72% |
| Asbestos Removal | 98,000.00 | 17.94% |
| **Subtotal of Areas** | **546,201.53** | **100.00%** |
| **Total** | **546,201.53** | **100.00%** |

 **Core Construction & Consulting**

Core Construction & Consulting
2234 Knollwood Place
Murfreesboro, TN 37130

## Recap by Category

| O&P Items | Total | % |
|---|---|---|
| ACOUSTICAL TREATMENTS | 1,384.91 | 0.20% |
| CABINETRY | 2,558.26 | 0.37% |
| CONT: CLEAN - GENERAL ITEMS | 37,606.24 | 5.50% |
| CLEANING | 5,619.95 | 0.82% |
| GENERAL DEMOLITION | 44,211.70 | 6.47% |
| DOORS | 9,209.48 | 1.35% |
| DRYWALL | 15,855.58 | 2.32% |
| ELECTRICAL | 4,658.65 | 0.68% |
| ELECTRICAL - SPECIAL SYSTEMS | 131,783.51 | 19.28% |
| HEAVY EQUIPMENT | 1,450.00 | 0.21% |
| FLOOR COVERING - CARPET | 41,765.02 | 6.11% |
| FLOOR COVERING - VINYL | 1,003.05 | 0.15% |
| FINISH CARPENTRY / TRIMWORK | 2,754.16 | 0.40% |
| FINISH HARDWARE | 2,499.89 | 0.37% |
| FRAMING & ROUGH CARPENTRY | 392.40 | 0.06% |
| HEAT, VENT & AIR CONDITIONING | 3,654.54 | 0.53% |
| LABOR ONLY | 39,213.60 | 5.74% |
| LIGHT FIXTURES | 2,370.81 | 0.35% |
| MIRRORS & SHOWER DOORS | 1,934.68 | 0.28% |
| PLUMBING | 29,318.24 | 4.29% |
| PAINTING | 41,041.83 | 6.00% |
| SCAFFOLDING | 5,000.00 | 0.73% |
| SPECIALTY ITEMS | 98,000.00 | 14.34% |
| STUCCO & EXTERIOR PLASTER | 992.00 | 0.15% |
| TILE | 10,736.46 | 1.57% |
| WINDOWS - ALUMINUM | 1,068.16 | 0.16% |
| WALLPAPER | 8,997.49 | 1.32% |
| **O&P Items Subtotal** | **545,080.61** | **79.74%** |

| Non-O&P Items | | Total | % |
|---|---|---|---|
| APPLIANCES - MAJOR W/O INSTALL | | 1,120.92 | 0.16% |
| Non-O&P Items Subtotal | | 1,120.92 | 0.16% |
| O&P Items Subtotal | | 545,080.61 | 79.74% |
| Material Sales Tax | @ 9.250% | 20,156.44 | 2.95% |
| Overhead | @ 10.0% | 56,514.13 | 8.27% |
| Profit | @ 10.0% | 56,514.13 | 8.27% |
| P Ppty Cleaning Tax | @ 9.250% | 4,174.28 | 0.61% |
| **Total** | | **683,560.51** | **100.00%** |

REALVALUEINN                                    4/6/2017          Page: 28

**》vericlaim** >> vericlaim
a sedgwick company

875 W. Poplar, Suite 23 #103
Collierville, TN 38017

## Summary for Building

| | |
|---|---:|
| Line Item Total | 150,632.57 |
| Overhead | 15,063.78 |
| Profit | 15,063.78 |
| Material Sales Tax | 5,693.98 |
| **Replacement Cost Value** | **$186,454.11** |
| Less Depreciation | (23,870.47) |
| **Actual Cash Value** | **$162,583.64** |
| Less Deductible | (5,000.00) |
| **Net Claim** | **$157,583.64** |
| Total Recoverable Depreciation | 23,870.47 |
| **Net Claim if Depreciation is Recovered** | **$181,454.11** |

Brad Staples
Regional General Adjuster



**»vericlaim** >> vericlaim

a sedgwick company

875 W. Poplar, Suite 23 #103
Collierville, TN 38017

## Recap by Category with Depreciation

| O&P Items | RCV | Deprec. | ACV |
|---|---|---|---|
| ACOUSTICAL TREATMENTS | 1,389.19 | 124.08 | 1,265.11 |
| APPLIANCES | 623.33 | 420.35 | 202.98 |
| CABINETRY | 1,919.85 | 952.59 | 967.26 |
| CLEANING | 9,727.08 | | 9,727.08 |
| GENERAL DEMOLITION | 14,931.14 | | 14,931.14 |
| DOORS | 8,874.09 | 1,143.97 | 7,730.12 |
| DRYWALL | 14,362.75 | 591.58 | 13,771.17 |
| ELECTRICAL | 3,749.48 | 296.66 | 3,452.82 |
| HEAVY EQUIPMENT | 1,450.00 | | 1,450.00 |
| FLOOR COVERING - CARPET | 20,188.97 | 3,663.56 | 16,525.41 |
| FLOOR COVERING - VINYL | 1,002.97 | 27.97 | 975.00 |
| FINISH CARPENTRY / TRIMWORK | 2,812.40 | 160.68 | 2,651.72 |
| FINISH HARDWARE | 3,975.76 | 1,330.43 | 2,645.33 |
| FRAMING & ROUGH CARPENTRY | 699.96 | 9.04 | 690.92 |
| HEAT, VENT & AIR CONDITIONING | 2,575.42 | 1,412.92 | 1,162.50 |
| LABOR ONLY | 1,623.90 | | 1,623.90 |
| LIGHT FIXTURES | 2,370.47 | 662.27 | 1,708.20 |
| MIRRORS & SHOWER DOORS | 1,317.74 | 245.95 | 1,071.79 |
| PLUMBING | 11,874.48 | 2,024.06 | 9,850.42 |
| PAINTING | 25,450.17 | 863.35 | 24,586.82 |
| STUCCO & EXTERIOR PLASTER | 476.16 | 20.16 | 456.00 |
| TILE | 9,438.65 | 528.60 | 8,910.05 |
| WINDOWS - ALUMINUM | 801.12 | 466.41 | 334.71 |
| WALLPAPER | 8,997.49 | 3,523.65 | 5,473.84 |
| O&P Items Subtotal | 150,632.57 | 18,468.28 | 132,164.29 |
| Overhead | 15,063.78 | 1,846.83 | 13,216.95 |
| Profit | 15,063.78 | 1,846.83 | 13,216.95 |
| Material Sales Tax | 5,693.98 | 1,708.53 | 3,985.45 |
| Total | 186,454.11 | 23,870.47 | 162,583.64 |

Tennessee law requires the following notice: It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

MEM17024390                                                   3/7/2017          Page: 46

**JS|HELD  J.S. Held LLC**

## Summary

| | | |
|---|---|---:|
| Line Item Total | | 169,409.34 |
| Material Sales Tax | | 4,145.72 |
| Subtotal | | 173,555.06 |
| Overhead | | 17,356.40 |
| Profit | | 17,356.40 |
| Replacement Cost Value | | $208,267.86 |
| Net Claim | | $208,267.86 |

Keith O'Donell

17-1408364REALVALUE                        6/5/201

**EXHIBIT**

5

**JS|HELD** J.S. Held LLC

## Recap by Category

| O&P Items | Total | % |
|---|---|---|
| ACOUSTICAL TREATMENTS | 3,405.55 | 1.64% |
| APPLIANCES | 448.00 | 0.22% |
| CLEANING | 30,775.69 | 14.78% |
| GENERAL DEMOLITION | 3,490.89 | 1.68% |
| DOORS | 5,555.80 | 2.67% |
| DRYWALL | 8,037.74 | 3.86% |
| ELECTRICAL | 13,049.43 | 6.27% |
| ELECTRICAL - SPECIAL SYSTEMS | 1,435.70 | 0.69% |
| HEAVY EQUIPMENT | 1,812.50 | 0.87% |
| FLOOR COVERING - CARPET | 18,512.11 | 8.89% |
| FLOOR COVERING - CERAMIC TILE | 848.44 | 0.41% |
| FINISH CARPENTRY / TRIMWORK | 33.81 | 0.02% |
| FINISH HARDWARE | 3,111.22 | 1.49% |
| GLASS, GLAZING, & STOREFRONTS | 838.22 | 0.40% |
| HEAT, VENT & AIR CONDITIONING | 4,880.83 | 2.34% |
| LABOR ONLY | 17,318.40 | 8.32% |
| LIGHT FIXTURES | 2,852.76 | 1.37% |
| MARBLE - CULTURED OR NATURAL | 587.60 | 0.28% |
| MIRRORS & SHOWER DOORS | 729.76 | 0.35% |
| PLUMBING | 3,800.50 | 1.82% |
| PAINTING | 41,630.04 | 19.99% |
| SCAFFOLDING | 2,353.45 | 1.13% |
| TOILET & BATH ACCESSORIES | 201.55 | 0.10% |
| TILE | 1,878.10 | 0.90% |
| TEMPORARY REPAIRS | 444.44 | 0.21% |
| WINDOWS - ALUMINUM | 1,068.16 | 0.51% |
| WINDOW TREATMENT | 308.65 | 0.15% |
| O&P Items Subtotal | 169,409.34 | 81.34% |
| Material Sales Tax | 4,145.72 | 1.99% |
| Overhead | 17,356.40 | 8.33% |
| Profit | 17,356.40 | 8.33% |
| Total | 208,267.86 | 100.00% |

**Nichols**
*Fire & Security*

7752 Highway 70   Bartlett, TN 38133
901-373-0128   Fax: 901-373-5631
www.nicholsfiresecurity.com
TN-1304

| | |
|---|---|
| | **Date:** 01/18/18 |
| **To:** Real Value Inn | **Project:** Fire alarm install |
| **Attn:** San | **Quote #:** JD-O11818-04 |

## PROPOSAL – QUOTATION

### Scope of work

1.  Install new fire alarm control panel, annunciator panel, power supplies and devices using some existing wire and running new wire. UI certify and test system with fire marshal. Install surface mount wire mold to areas with no protection and add devices for a system that meets current life safety code

| | | |
|---|---|---|
| **Equipment** | $ | 76,354.00 |
| **Labor** | $ | 57,600.00 |
| **TOTAL** | $ | 133,954.00 |

**Total Includes:**

1)  1-CPU2-640 Fire Alarm Control/with Batteries
2)  1-KDM-R2 Keyboard
3)  1-LEM 320 Loop Expander Module
4)  1-LCM-320 Loop Control Module
5)  1-Fire Alarm Annunciator
6)  4-FCPS2458 Power Supplies/with Batteries
7)  8- Control Modules to trip Power Supplies
8)  15-Pull stations for each exit
9)  1-kitchen hood module
10) 24- Wall Mount Horn Strobe Units
11) 12-Ceiling Mount Horn Strobe Units
12) 6-Strobe Only Units
13) 6-Monitor modules to monitor power supplies
14) 163-Low Frequency Sounder Bases
15) 85-Ceiling Smoke Bases
16) 223-FSP-851 Smoke Heads
17) 25-FST-851 smoke with built in thermal detector head
18) 5-120vac surge protection modules
19) 1-24vdc Data Surge Protection Module
20) 4-DNR Duct Mounted Smokes/with tube head and remote test switch
21) Wire Mold and Wire Mold Boxes
22) Conduit boxes and fittings
23) Fire Alarm Cable
24) Electrical Materials
25) Installation
26) Drawings and Permits
27) One year warranty on equipment and installation

**Total doesn't Include**

1)  Patching or painting of any kind
2)  To perform this work with no additional charges we will have to be given access to an entire floor at a time there can be no unlocked rooms or people staying in rooms during construction.
3)  Elevators ,The elevators onsite will have to be upgraded to install fire service relays
4)  Hvac shutdown if these shutdown wires are not in place they are to be installed by others
5)  120VAC Circuits One New breaker will have to be installed on each floor for the fire alarm power supplies by others
6)  Removal of 120vac smoke detectors and cover plates to be done by others



EXHIBIT
6

7)   A fire watch will need to be posted during construction this will be done by others

**NOTES**

1.   Access to an entire floor will be needed for up to twenty business days per floor for Nichols to successfully complete this work

2.   The Equipment cost will have to be paid up front. Once we have received a check for 76,354.00 Nichols will order all the equipment for this job at this time. This will take roughly three weeks for delivery. We can then begin work this will be scheduled with real value a week in advance so that provisions can be made to shut down the fourth floor. Once completed we will move to the third floor. And so on until complete

3.   Once we have completed both the third and fourth floors a 50% labor draw will be required $28,800

4.   Once we have completed all floors and had a successful pretest the balance of 28,800 is due

5.   Once the final payment has been made Nichols will turn over all documentation train staff and conduct final testing wit fire marshal

Please be advised that this bid includes work listed above per plans and specs provided by customer or engineer. It is further understood that any extra work requested by customer that is not listed on this contract will have additional charge.
    Nichols Fire & Security reserves the right to place a mechanics and materials lien on the property within the time frame allowed by the Tennessee Code Annotated once services or supplies are rendered or supplied or after notice of completion.

All material is guaranteed to be as specified. All work to be complete in a workmanlike manner according to standard practices. Any alteration or deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents, or delays beyond our control. Owner to carry fire, tornado, and other necessary insurance. Our workers are fully covered by Workman's Compensation Insurance.

Authorized Signature

Jimmy Davitt/VP Of Operations

We may withdraw this proposal if not accepted within 30 days.

**ACCEPTANCE OF PROPOSAL** The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do this work as specified. Payment will be made as outlined above.

Signature: _____          Date of Acceptance: _Dec 30, 2018_
              Contractor / Owner          Title

**Terms are net 15 days from date of invoice** In the event that the account is not paid per the terms of the contract, the above signed agrees to pay all costs of collections, including Court Costs and Attorney Fees

Quote#jd011818-04

**2.    Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a.    Pay its chosen appraiser; and

b.    Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.



Santosh Iyer

3898 Lamar Ave
Memphis, TN 38118

February 6, 2018

Edward Walsh
Senior Claims Examiner - Property Claims
Arch Insurance Group
P.O. Box 542033
Omaha, NE 68154

Brad Staples
Regional General Adjuster
Vericlaim
875 W. Poplar Ave. Ste. 23 # 103
Collierville, TN  38017

                                      RE:     SA Hospitality, Inc.
                                              Pol# ESP7302556-01
                                              Clm# 000013030820
                                              DOL 2/ 16/ 17
                                              3896 Lamar Ave., Memphis, TN

Gentlemen,

Please be advised that I have been negotiating with you both in good faith attempting to
conclude this claim for fire damages for over a year without success. Therefore, effective
immediately, I hereby invoke the Appraisal Clause as outlined in the policy contract to
resolve the items in dispute and the total amount of this loss.

I have appointed the dispute resolution firm, Resolution Consultants, to act as my
Appraiser in this matter. Please contact Michael B Frank of Resolution Consultants as
soon as possible to advise him of your Appraiser's name and contact information.

Mr. Frank can be contacted at 972.523.7214 or  mfrank@resolutionconsultants.com
His mailing address is P.O. Box 5824, Frisco, TX 75034.

Sincerely yours,

Santosh Iyer

SA Hospitality, Inc.

EXHIBIT
8

## ☆ Arch | Insurance

Arch Insurance Company
1601 Cherry Street
3 Parkway Suite 1500
Philadelphia, PA 19102

215-606-1600 Main
Fax: 856-637-5861

**VIA E-MAIL, FIRST CLASS MAIL &
CERTIFIED MAIL, RETURN
RECEIPT REQUESTED**

Ms. Santosh Iyer
SA Hospitality Group, Inc.
3896 Lamar Avenue
Memphis, TN 38118
saniyer361@gmail.com

|        |             |                                         |
|--------|-------------|-----------------------------------------|
| Re:    | Insured:    | SA Hospitality Group, Inc.              |
|        | Claim #:    | 000013030820                            |
|        | Policy #:   | ESP 7302556-01                          |
|        | Location:   | 3896 Lamar Avenue, Memphis, TN 38118    |
|        | Date of Loss: | February 16, 2017                     |

Dear Ms. Iyer:

We write on behalf of Arch Specialty Insurance Company (Arch). We have received and reviewed your February 6, 2018 and March 20, 2018 letters demanding appraisal of the claims made by SA Hospitality Group, Inc. as a result of the February 16, 2017 fire at the hotel located at 3896 Lamar Avenue, Memphis, TN 38118. For the reasons discussed below, Arch rejects your demands for appraisal, reiterates the requests for documentation made in prior correspondence, and requests additional documentation to complete the investigation and adjustment of SA Hospitality's claims arising out of the February 16, 2017 fire.

Shortly after the fire, Arch's independent adjuster, Brad Staples, prepared an estimate of the cost to repair the fire damage to the hotel building and the actual cash value of that damage. Mr. Staples' estimate included the immediate post-fire cleanup work performed by Belfor and an estimate of the cost to remove and dispose of asbestos containing materials from Specialty Abatement Services, Inc. The cost to repair the damage was estimated at $210,254.44, and the actual cash value of the building damage, net of the $5,000.00 policy deductible, at $174,183.97. A copy of the estimate and documentation from Belfor and Specialty Abatement Services, Inc. was provided to you. Once you executed the sworn proof of loss required by the policy, payment of the actual cash value of the damage was made in mid-April, 2017.

**EXHIBIT
9**

3. Any and all documentation of payments made for the repairs to the hotel building, including, but not limited to, cancelled checks, paid bills, lien waivers or transfers of funds;

4. Copies of all building permits obtained in connection with the fire damage repairs; and

5. Any and all correspondence with mortgage holders, lenders, or others in connection with the building damage repairs.

To the extent your demand for appraisal includes appraisal of claims for damage to business personal property or business income losses, Arch must reject your demand because you have never made specific claims for the amount of the business personal property or business income losses allegedly resulting from the fire and have never provided the documentation of these claims Arch requested from SA Hospitality. Specifically, Mr. Staples repeatedly asked you to provide an inventory of business personal property for use in identifying the value of the damage to business personal property resulting from the fire, but you have failed to do so. Likewise, Arch retained Gregory Pellish, of CGM Accounting Associates, Inc. to evaluate the business income loss; Mr. Pellish has repeatedly asked you for documentation regarding the business income loss resulting from the fire and you have repeatedly failed to provide that documentation.

Since you have not made specific claims for either the business personal property or business income losses resulting from the fire, Arch has no basis to evaluate such claims or to determine whether there is a disagreement between SA Hospitality and Arch regarding those claims. Based on the forgoing provisions of the policy, SA Hospitality is required to produce the following documents regarding the business personal property and business income claims:

1. An inventory of the business personal property damaged in the fire;
2. An inventory of all business personal property at the hotel, including relevant depreciation schedules;
3. Documentation of all amounts spent to repair or replace business personal property damaged in the fire;
4. A detailed list of all hotel rooms and room types;
5. A detailed layout of the hotel;
6. Detailed Monthly Profit and Loss Statements from January, 2016 to the present;
7. Detailed Monthly Rent Roll Reports from January, 2016 to the present;
8. Complete copies of any and all lease agreements in effect at the time of the fire;
9. Complete copies of your Federal Income Tax Returns for 2014, 2015 and 2016;
10. A complete list of all rooms that could not be occupied as a result of the fire;
11. A complete list of all rooms considered "out of order" before the fire.

We ask that you provide this documentation, and all documentation requested in this letter, on or before May 1, 2018. Please be advised that your failure to provide the requested information may be considered a breach of your obligations under the policy of insurance.

Finally, Arch reserves all of its rights under the policy of insurance and otherwise. This letter, prior correspondence and the efforts to investigate and adjust this claim were not meant to waive any of Arch's rights or modify any of the terms of the policy of insurance. Arch will insist on compliance with all the terms of the insurance policy, waiving none.

In your meeting with Mr. Staples, you told him SA Hospitality had hired a contractor to make repairs, but you refused to identify the contractor. You later submitted a building repair bid from Brandon Whitsett, a public adjuster and principal of Core Construction and Consulting, for $683,560.51. Arch retained Brent Easterwood of J.S Held, LLC to review Mr. Whitsett's building estimate and provide his own estimate. Mr. Staples and Mr. Easterwood sought to meet with Mr. Whitsett at the hotel to discuss the estimates, but you refused to have Mr. Whitsett present for Mr. Easterwood's inspection of the property. Mr. Easterwood estimated the cost to repair the fire damage to the hotel at $208,267.86, and a copy of the estimate was provided to you.

Throughout the summer of 2017, Mr. Staples repeatedly asked Mr. Whitsett to respond to and comment on the differences between his estimate and the J.S. Held estimate. Mr. Whitsett refused to do so. Mr. Staples spoke with Mr. Whitsett in September, 2017 and Mr. Whitsett refused to meet onsite or otherwise discuss scope of work and pricing differences. He only commented that the estimates were "miles apart", but refused to discuss the details of the differences.

On November 30, 2017, Mr. Staples sent a letter to Mr. Whitsett. By this time, repairs had been made to the hotel. Mr. Staples' November 30, 2017 letter outlined the basis for the actual cash value payment previously made and requested documentation regarding the fire damage repairs to the hotel building. As he did not receive a response, Mr. Staples sent a follow up letter on January 2, 2018 requesting the same information regarding the building damage. Mr. Whitsett responded on January 6, 2018, but failed to provide the information requested regarding the fire damage repairs to the building.

The appraisal provision of the Arch policy provides as follows:

> 2.   **Appraisal**
>
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will stated separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a.   Pay its chosen appraiser; and
>
> b.   Bear the other expense of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

Arch rejects your demand for appraisal of the building damage as there has been no confirmation that SA Hospitality and Arch disagree on the amount of the loss., Both Arch and SA Hospitality have employed adjusters in connection with your claim. Your adjuster, however, has refused to meet with, discuss or enter into any kind of adjustment activities with respect to the estimates of the cost to repair the fire damage to the hotel. That said, we understand repairs have been

completed and the Arch policy provides as follows with respect to the replacement cost coverage of the policy:

**3.    Replacement Cost**

**a.**    Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

**b.**    This Optional Coverage does not apply to:

(1) Personal property of others;
(2) Contents of a residence;
(3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or
(4) "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.**    You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.**    We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

***

**e.**    We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3), subject to f. below:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace the lost or damaged property with other property:

(a) Of comparable material and quality; and
(b) Used for the same purpose; or

(3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

\*\*\*

f.   The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

Arch also rejects your appraisal demand regarding the fire damage to the building because the differing estimates of the cost to repair the fire damage to the building are now irrelevant. The additional amount recoverable under the replacement cost coverage of the policy will not be determined by resolving differences between the estimates. Instead, the amount will be based on either the cost to repair the fire damage with property of comparable material and quality for the same purpose or the amount SA Hospitality necessarily spent to repair that fire damage.

The policy of insurance also imposes certain duties on SA Hospitality in the event of a loss. Specifically, the policy provides, in relevant part, as follows:

3.   **Duties In The Event Of Loss Or Damage**

a.   You must see that the following are done in the event of loss or damage to Covered Property.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

(8) Cooperate with us in the investigation or settlement of the claim.

b.   We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

Pursuant to the forgoing provisions of the policy, SA Hospitality is required to produce the following documents in connection with the fire damage repairs to the building:

1.   Any and all contracts entered into in connection with repairs of the building damage resulting from the fire;
2.   Any and all correspondence or communications with contractors or others regarding the repairs of the fire damage to the hotel building;

We look forward to receiving the documents identified above.  If you have any questions, please contact the undersigned.

Sincerely,

Edward Walsh
Senior Claims Examiner
Property Claims
On behalf of
Arch Specialty Insurance Company

cc:     Brad Staples
        bstaples@vericlaim.com

        Brandon Whitsett
        Brandon@coreccusa.com

# UMPIRES

**Richard Brown**

**P.O. Box 220**

**Tavares, FL 32778**

**352.742.5135**


**Tony Rougas**

**P.O. Box 5380**

**Abilene, TX 79608**

**325.977.0412**


**Robert J Norton**

**117 W. Alexander St., #130**

**Plant City, FL 33563**

**813.757.6450**


EXHIBIT 10